# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **Antonio Jackson,** | Case Number: _____ |
| *Plaintiff*, | Division: _____ |
| v. | |
| **TrueAccord Corp.,** | Ad Damnum: **$2,000 + Punitive Damages + Atty Fees & Costs** |
| *Defendant*. | **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Antonio Jackson** ("**Mr. Jackson**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **TrueAccord Corp.** ("**TrueAccord**"), stating as follows:

## PRELIMINARY STATEMENT

1. Mr. Jackson brings this action against the Defendant for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), and the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes *et. seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCCPA, Section 559.77, Florida Statutes, and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction for Mr. Jackson's state law claim under the FCCPA pursuant to 28 U.S.C. § 1367.

4. TrueAccord is subject to the provisions of the FDCPA and the FCCPA, and to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Jackson

6. **Mr. Jackson** is a natural person residing in Orlando, Orange County, Florida, and a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

### TrueAccord

7. **TrueAccord** is a Delaware corporation with a primary business address of **303 Second Street, Suite 750, San Francisco, CA 94107**.

8. TrueAccord is registered to conduct business in the State of Florida, where its Registered Agent is **Incorp Services, Inc., 17888 67th Ct. N., Loxahatchee, FL 33470.**

### DEFENDANT IS A DEBT COLLECTOR

9. TrueAccord is a *Debt Collector* within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that it uses postal mail or some other instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts,

and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. TrueAccord is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA9903295**. **SEE PLAINTIFF'S EXHIBIT A**. As a licensed CCA, TrueAccord knows or should know the requirements of both the FDCPA and the FCCPA.

## FACTUAL ALLEGATIONS

11. According to TrueAccord, Mr. Jackson allegedly obtained a payday loan (the "**Debt**") from an internet-based payday lender purportedly owned and operated by the Kashia Band of Pomo Indians of the Stewarts Point Rancheria (the "**Kashia Tribe**"), doing business as InboxLoan **("Inbox")**, from the website inboxloans.com.

12. The Debt arose from a transaction which was primarily for family, personal, and household purposes, specifically a payday loan for personal purposes and expenses, and meets the definition of *Debt* under the FDCPA and the FCCPA, 15 U.S.C. § 1692a(5) and Section 559.55(6), Florida Statutes, respectively.

13. The interest rate charged was 780% annually, meaning that Mr. Jackson was to repay $3,904.56 over a 12-month period for a $500 loan.

14. Mr. Jackson repaid over $3,000 for the $500 he borrowed.

15. Despite this, Inbox claimed he still owed $428.49.

16. At all times relevant, Mr. Jackson has been a Florida resident.

17. Mr. Jackson allegedly took out the payday loan in Orange County, Florida, and the proceeds from the loan were electronically transmitted to his bank account in an Orlando bank, via an *Automated Clearing House* ("**ACH**") credit.

18. Thus, the entire alleged transaction occurred within the State of Florida.

19. Section 687.071(3), Florida Statutes, states that "any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, commits a felony of the third degree." Emphasis added.

20. Pursuant to Section 687.071(7), Florida Statutes, no loan made in violation of this statute is an enforceable debt in the State of Florida.

21. Florida's usury statutes, like those of other states, are designed to "protect against the oppression of debtors through excessive rates of interest charged by lenders." *Sheehy v. Franchise Tax Bd.*, 84 Cal.App.4th 280, 283, 100 Cal. Rptr. 2d 760 (2000).

22. Any person who willfully makes such a loan, in addition to being subject to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

23. The loan from which the Debt arose is thus void and unenforceable in Florida.

24. Inbox was never licensed by the Florida Office of Financial Regulation as a payday lender, nor was it a federally chartered bank, nor did it hold any kind of regulatory license.

25. Inbox relies on choice-of-law provisions and a claim of sovereign immunity in its efforts to lend to Florida consumers at interest rates that violate Florida's usury statutes.

26. Indeed, Inbox *claims* to be wholly owned and operated by the Kashia Tribe, a sovereign nation located within the United States of America.

27. Just so, Inbox was created and organized by Stanley Chao **("Chao")**, a non-member of the Tribe who runs ARB Risk Management Holdings, LLC, an investment company that is incorporated in Delaware and registered in Florida as a foreign corporation with an Orlando, Florida address.

28. Chao also owns ARB Call Facilities, which performs call center work for payday lenders and other entities, with call centers in Costa Rica, the Philippines, Egypt and other locations. *See* The Manila Times, *ARB Call Facilities yearend party*, December 26, 2018, https://www.manilatimes.net/2018/12/26/public-square/arb-call-facilities-yearend-party/487722/.

29. Domain registration records from June 16, 2014, show that Inbox's website, www.inboxloans.com, listed "Stanley Chao" as the registrant's name, with an email address of "stanley@arb-co.com" as the administrative, technical and registrant contacts. **SEE PLAINTIFF'S EXHIBIT B.**

30. The registrant organization for Inbox's website was, at that time, Northern Plains Funding, LLC ("**Northern Plains**"), P.O. Box 516, Hays, Montana, 59527. *Id.*

31. Northern Plains, in turn, claims to be owned by the Fort Belknap Indian Community ("**Fort Belknap Tribe**") in Hays, Montana.

32. At some point between 2015 and 2019, Inbox stopped claiming to be owned by the Fort Belknap Tribe in Montana and – somehow – claimed instead that it was owned by the Kashia Tribe in California.

33. The Kashia Tribe and the Fort Belknap Tribe are both rural, isolated, and economically disadvantaged tribes. Both have been willing to claim ownership of otherwise-illegal payday lending websites, in exchange for a small percentage – generally under 5% – of loan revenues as "rent."

34. Such arrangements are referred to as "Rent-A-Tribe" schemes.

35. Through such schemes, non-tribal payday lenders attempt to circumvent state and federal laws which would otherwise prohibit usurious loans from being issued. They do this by issuing loans in the name of a Native American tribal business entity that purports to be shielded from state and federal law via tribal sovereign immunity. In reality, the tribal lending entity is a mere "front" for an illegal lending program; all substantive aspects of the payday lending operation (*e.g.*, financial backing, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections) are performed by individuals and entities who are unaffiliated with the Native American tribe. In exchange for "renting" its sovereign immunity to the payday lenders, the tribe receives

a small fraction of the revenues generated; while the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

36. Currently, Inbox claims its usurious loans are made under a lending code adopted by the Kashia Tribe, and, since Inbox is wholly "owned" by the Kashia Tribe, it cannot be criminally prosecuted for violating Florida's anti-loan-sharking statutes due to sovereign immunity.

37. However, sovereign immunity does not turn an otherwise illegal loan into a legal one; at best, it potentially creates a defense to the criminal or civil prosecution of the crime. *See, e.g., United States v. Neff*, No. 18-2282 (3d Cir., Sep. 6, 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

38. An entity must function as a legitimate arm of the tribe in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010) (holding that "tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity.")

39. The capital used to fund Inbox's payday loans comes from Chao, his investors, and/or other unknown, non-tribal entities, which also manage the business, its marketing, underwriting policies, and all other key elements of the enterprise.

40. Chao and the other non-tribal investors receive the vast majority of the payday loan profits while the Tribe receives a tiny fraction of overall revenue, in the range of 3%, for playing the role of strawman owner of the business.

41. Thus, Inbox is clearly not a tribal entity, despite claiming, at different points in time, to be affiliated with two geographically divergent, unrelated tribes; rather, it is an "alter-ego" for Chao and his investors and associates.

42. Inbox's loans are therefore not subject to an immunity defense and are unenforceable in the State of Florida.

43. In or around January 2020, Inbox placed, transferred, or otherwise forwarded the Debt to TrueAccord.

44. In 2020, TrueAccord began emailing Mr. Jackson, attempting to collect the Debt.

45. At this time, TrueAccord alleged that $428.49 was owed by Mr. Jackson.

46. This $428.49 represents only usurious interest and fees, as Mr. Jackson had already paid back far more than the original principal amount of loan.

47. One such collection email from TrueAccord was received by Mr. Jackson on April 1, 2020. **SEE PLAINTIFF'S EXHIBIT C.**

48. The email stated, "You still have an outstanding balance of $428.49 with Inbox Loan. We have made this process easy and convenient since your balance can be paid directly on our website." *Id.*

49. An email from a debt collector is a *Communication* pursuant to the FDCPA. *See Hart v. Credit Control, LLC*, 871 F. 3d 1255, 1257-58 (11th Cir. 2017).

50. At no point in any of its emails, nor anywhere on TrueAccord's website, did TrueAccord disclose that Florida law prevents Mr. Jackson from being sued for the Debt, as the underlying loan was void.

51. The failure to disclose that a consumer cannot be sued for a debt is materially misleading to an unsophisticated consumer, especially when paired with prominent language advertising a "settlement" offer since an unsophisticated consumer would believe the debt collector was offering to settle an account for a particular amount in lieu of legal action. *See Baez v. LTD Fin. Servs., L.P.,* No. 17-13842 (11th Cir. Dec. 7, 2018), *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 425, 428-30 (3d Cir. 2018); *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 684, 687 (7th Cir. 2017*); Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 395, 399-400 (6th Cir. 2015); and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).

52. Indeed, TrueAccord failed to disclose that the alleged Debt was not owed under Florida law.

53. The failure to disclose that a debt from a digital loan shark like Inbox is not legally owed under Florida law materially disadvantages an unsophisticated consumer.

54. TrueAccord collects debts for many different online payday lenders, all of whom falsely claim to be owned by various Native American tribes. TrueAccord has been sued multiple times for its involvement in the collection of illegal payday loan debts but continues to accept new debts from online payday lenders, despite knowing their illegal provenance.

55. TrueAccord's website and emails to Mr. Jackson were *Communications* as defined by 15 U.S.C. § 1692a(2) and Section 559.55(2), Florida Statutes.

56. Mr. Jackson has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

57. Mr. Jackson adopts and incorporates paragraphs 1 – 56 as if fully restated herein.

58. TrueAccord violated **15 U.S.C. § 1692e(2)(a)** when it made false representations regarding the character or legal status of the Debt by falsely representing that the Debt was enforceable despite being unenforceable as usurious under Florida law.

59. TrueAccord violated **15 U.S.C. § 1692e and 1692e(10)** in that it used false, deceptive, and misleading representations in connection with the collection of a debt by:

   a. falsely representing that the Debt was legally enforceable when it was usurious and unenforceable under Florida law; and,

   b. failing to disclose that no legal action could be taken against Mr. Jackson for nonpayment, despite emailing him a "settlement" payment plan and implying that TrueAccord was willing to settle a debt *in lieu* of legal action.

60. TrueAccord violated **15 U.S.C. § 1692f(1)** when it attempted to collect an amount which included an illegally applied interest rate of 780 percent per annum, when such fees are felonious under Florida criminal statutes. *See* Section 687.071(3), Florida Statutes.

61. TrueAccord's actions were willful and intentional and representative of their normal business practices.

**WHEREFORE**, Mr. Jackson respectfully requests this Honorable Court enter judgment against TrueAccord, and for him, for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A),

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCCPA

62. Mr. Jackson adopts and incorporates paragraphs 1 – 56 as if fully restated herein.

63. TrueAccord violated Section **559.72(9)**, Florida Statutes, when it attempted to enforce a debt against Mr. Jackson which it knew or should have known was illegitimate and unenforceable due to the application of an annual interest rate in excess of 780 percent.

64. TrueAccord's actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Mr. Jackson.

65. TrueAccord knew or should have known of the illegal nature of the Debt for many reasons, including multiple prior lawsuits filed against it for substantially similar collection attempts.

66. By its conduct, TrueAccord is liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against TrueAccord, and for him, for:

a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b. Actual damages pursuant to Section 559.77(2), Florida Statutes;

c. Punitive damages for its intentional, illegal debt collection efforts, pursuant to Section 559.77(2), Florida Statutes;

d. Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Mr. Jackson pursuant to Section 559.77(2), Florida Statutes;

e. Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

f. Such other relief that this Court deems just and proper.

**JURY TRIAL DEMANDED**

Mr. Jackson demands a jury trial on all issues so triable.

Respectfully submitted this **April 17, 2020**, by:

**SERAPH LEGAL, P. A.**
/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com
/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

| | |
|---|---|
| **A** | **TrueAccord's Florida CCA License** |
| **B** | **Domain Registration Records for InboxLoan.com, Record Date: June 16, 2014** |
| **C** | **Defendant's Email to Mr. Jackson, April 1, 2020** |